**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

DAVID RIVERA, JR.                             Case Number: 6:08-bk-00296-LVV
                                              Chapter 13

        Debtor,

_____/

DAVID RIVERA, JR.,

        Plaintiff,

  vs.                                         Adv. Proc. No.

WELLS FARGO BANK, N.A.,
NAVIENT SOLUTIONS, LLC, and
SALLIE MAE BANK,

        Defendants.

_____/

**PLAINTIFF'S COMPLAINT**

      Plaintiff, DAVID RIVERA, JR., by and through the undersigned counsel, files this Complaint against WELLS FARGO BANK, N.A., NAVIENT SOLUTIONS, LLC, and SALLIE MAE BANK, on personal knowledge as to those matters within his capacity, and information and belief as to all other matters, as follows:

1

# I. PRELIMINARY STATEMENT

1. This adversary proceeding seeks a determination of discharge of a purported student debt owed by the Plaintiff and claimed to be owned by the Defendants, Wells Fargo Bank, N.A. ("Wells"), Navient Solutions, LLC ("Navient"), and Sallie Mae Bank ("SMB"). Historically, the impetus for nondischargeability of student loans under section §523(a)(8) of the Bankruptcy Code was largely to protect the government (and by extension, the taxpayer) from students who took advantage of student loan programs to finance an education, and then to file for bankruptcy before moving onto lucrative careers. In 2005, after extensive lobbying, private lenders and debt collectors won limited protection in bankruptcy cases for some of their educational loan products. Therefore, Congress specifically limited protection to private education loan instruments to the extent that such money supplemented federal student loan lending; money lent to students at Title IV accredited schools for tuition, room, board, and books ("Qualified Education Expenses."§523(a)(8)(B)). However, this created an opportunity for unscrupulous creditors to exploit the application of section 523(a)(8) and deceive debtors into thinking that all private student loans, like their federal cousins, were excepted from discharge. The exploitation includes aggressive marketing to students and extension of loans in large amounts regardless of the cost of education and the borrower's ability to repay, and opaque disclosures creating the false impression that private student loans are non-dischargeable in bankruptcy.

2. This problem was made worse because section 523(a)(8) is self-executing and thus its correct application relies on the good faith and honesty of creditors. When a debtor files a bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the amount of the debt, the name of the creditor, and the amount. After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts listed on

the bankruptcy petition except for those listed in section 523. Importantly, the discharge order does not specify which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including "debts for most student loans." The initial burden of proving that the debt is encompassed by section 523(a)(8) is on the creditor. Once the creditor proves the debt is presumptively non-dischargeable, the burden then shifts to the debtor to prove that repaying the debt would constitute an "undue hardship." Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge under section 523(a)(8), and where doubt exists, seek clarity from the court. The creditor's good faith, and the threat of sanctions, are the only checks on compliance with discharge injunctions.

3. This action is brought by the Plaintiff to enforce his rights under bankruptcy law regarding private student loans for which Wells, Navient, and SMB claim to be the owners, and operating through their agents, including their loan servicers, and their debt collectors ("the Subject Debt"). The Subject Debt should be discharged in Plaintiff's Chapter 13 bankruptcy filed on January 15, 2008 because it is outside the three exceptions to bankruptcy discharge prescribed by 11 U.S.C. §523(a)(8).

4. Pursuant to the foregoing, as the claimed creditors for the Subject Debt, Wells, Navient, and SMB have the responsibility to determine whether the Loans are excepted from discharge, and where doubt exists, to seek clarity from the court. However, because Wells, Navient, and SMB, through their agents, have continued to collect on the Subject Debt for more than seven years, despite actual knowledge of Plaintiff's bankruptcy, he is compelled to bring this proceeding to determine its dischargeability. In this adversary proceeding, the burden of proof to show that a debt exists, and the debt is the type excepted from discharge under §523, rests solely upon Wells, Navient, and SMB.

## II. PARTIES

5. David Rivera, Jr. is an individual and resident of Seminole County, Florida who filed for bankruptcy relief under Chapter 13 on January 15, 2008, and who received a discharge from this Court on November 19, 2013.

6. Defendant, WELLS FARGO BANK, N.A. ("Wells") purportedly acts as a creditor and owner of the Debt. At all relevant times, Defendant Wells engaged in lending and securitizing loans made to individual consumers like the Plaintiff. Wells acted through its agents, including loan servicer, debt collector, and debt collecting lawyers to collect on these loans, upon default, throughout the State of Florida.

7. Defendant, NAVIENT SOLUTIONS, LLC ("Navient") purportedly acts as a creditor and owner of the Debt. At all relevant times, Defendant Navient engaged in lending and securitizing loans made to individual consumers like the Plaintiff. Navient acted through its agents, including loan servicer, debt collector, and debt collecting lawyers to collect on these loans, upon default, throughout the State of Florida.

8. Defendant, SALLIE MAE BANK ("SMB") purportedly acts as a creditor and owner of the Debt. At all relevant times, Defendant SMB engaged in lending and securitizing loans made to individual consumers like the Plaintiff. SMB acted through its agents, including loan servicer, debt collector, and debt collecting lawyers to collect on these loans, upon default, throughout the State of Florida.

## III.
## JURISDICTION AND VENUE

9. This Adversary Proceeding is brought in connection with the Chapter 13 bankruptcy case number 6:08-bk-00296-LVV.

10. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332. This is a core proceeding under Title 11 because it concerns a determination as to the dischargeability of a debt. Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding and involve questions of federal law.

11. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), and Federal Rules of Bankruptcy Procedure Rule 7001.

12. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1409 because this matter arises in and is related to a bankruptcy case in this district.

### III. FACTUAL ALLEGATIONS

13. Plaintiff attended the Orlando Culinary Academy between 2003 and 2005 and obtained an Associate's degree when he finished. During these academic years, Plaintiff's education at the institution was financed fully by proceeds from federal loans that he borrowed. Yet, Defendants (or their predecessors in interest), through various marketing campaigns, induced Plaintiff to borrow approximately $50,000.00, based upon variable interests ("the Subject Debt"). Defendants and other lenders enticed and extended these types of loan to students like the Plaintiff, despite the knowledge that they would have also incurred substantial amounts in loans funded by the federal government. Lenders like Defendants have made loans, including the Subject Debt, knowing full well that Plaintiff and those who are similarly situated, received more than enough funds to pay for their education and did not need to incur any private debt for purpose of their education.

14. Despite the bankruptcy discharge, Defendants caused for its agents to make repeated demands upon Plaintiff to repay the Subject Debt. For an extended period of time,

Defendants' agents engaged in aggressive collection tactics, including calling the Plaintiff repeatedly. To stop this relentless and vicious debt collection campaign, Plaintiff was coerced into making payments toward the Subject Debt. Plaintiff never affirmed or agreed to pay the Subject Debt as it was discharged in bankruptcy in 2013.

15. Because of Defendants' relentless and prolonged debt collection campaign against Plaintiff for the last 7 years, including its agents' prohibited practice of coercing Plaintiff into making payments when it knew all along that the Subject Debt was discharged, Defendants have caused Plaintiff to suffer significant emotional distress on an ongoing basis which interferes with his ability to enjoy peace and quality of life.

**A. The Distinction between Dischargeable and Non-Dischargeable Student Loans**

16. The Subject Debt was of variable interest rates. The original loans were made based on Plaintiff's credit score and other factors relating to his credit worthiness. Defendants' loan programs were marketed aggressively, and the amount of loans extended to students, including the Plaintiff, far exceeded the cost of attendance applicable to Orlando Culinary Academy, and in additional to substantial federal loan proceeds provided by the U.S. Department of Education. The Subject Debt does not represent the flexible repayment terms or borrower protection that federal student loans provide. Rather, it carries extremely high variable high interest rates, loan limits, terms and conditions that are determined solely by the lender, like a credit card debt or any other unsecured debts.

17. Plaintiff incurred the Subject Debt shortly before he had to pay for education expenses relating to his pursuit of the associate's degree during the academic years of 2003 – 2005. Because the federal loan proceeds Plaintiff received in the same years were used to pay for his

tuition, books, room and board fully, the Subject Debt was not necessary for his educational purposes and was never used for any educational purposes.

17. Defendants claim to be the owners of the Subject Debt and have been relentless in their debt collection efforts against Plaintiff, through their agents.

18. Plaintiff filed for relief under Chapter 13 of the Bankruptcy Code on January 15, 2008, in the United States Bankruptcy Court for the Middle District of Florida. He listed the Subject Debt on Schedule F, identifying Defendants, through their agents, as creditors for said debt.

19. Defendants were duly notified of Plaintiff's bankruptcy filing. In fact, Defendants filed proofs of claims in the case, and received distributions totaling approximately $46,600.00 from the Chapter 13 Trustee.

20. The bankruptcy court granted Plaintiff a discharge on November 19, 2013. Defendants likewise were notified of said discharge.

### IV. APPLICABLE LAW ON DISCHARGEABILITY OF STUDENT LOAN DEBT

21. Section 523(a)(8) currently protects from discharge:

   (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

   (ii) an obligation to repay funds received as an educational benefit, scholarship, to stipend; or

   (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986.

22. Subsection 523(a)(8)(B) is the focus of this Complaint because the Subject Debt is dischargeable under §523(a)(8)(B) as it is not a "qualified educational loans" Subsection (B) protects only "qualified educational loans" (QEL) as defined in IRC 221(d)(1). A QEL is defined


7

as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses." "Qualified education expenses" are in turn defined as "the cost of attendance at an eligible educational institution." "Cost of attendance" is defined as "tuition, books and a reasonable allowance for room and board (as defined by the institution)." The "cost of attendance" "as defined by the institution" must adhere to a federal methodology that calculates the full cost of attendance for a given school in a given area. No loans in excess of that calculated amount may be qualified. *Thus, any money lent to a student who has already reached her federal limit under the qualified "cost of attendance" is a nonqualified private student loan and has no protection from discharge under §523(a)(8).*

24.     The legislature, in enacting §523(a)(8), did not intend to expand non-dischargeability to private educational loans on a broad basis. Rather, section 523(a)(8)(23) provides only limited protection from discharge of bankruptcy; a loan is exempt from discharge pursuant to the section only if it is an educational loan that is also a qualified educational loan.

25.     The term "educational loan" is not defined in the Code, but legislative history and circuit caselaw demonstrate that "educational loans" are different from other types of consumer debts because they are made without for-profit business consideration including credit check or co-signer and offered at a low interest rate to further the public good, which is to protect the solvency of government education loan programs for future students.

26.     As applicable to the Subject Debt, the term "Qualified Education Loan" is defined in 26 U.S.C.§221(d)(1) of the Internal Revenue Code as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses."

27.     Qualified higher education expenses, therefore, are limited to certain expenses incurred at "an eligible institution," *i.e.*, one certified by the Department of Education under Title

8

IV.[1] To qualify under these statutes, among other requirements, the particular loan must be used "solely to pay qualified higher education expenses," which are defined as the "cost of attendance at an eligible educational institution."

28.     "Cost of Attendance" is a term of art found in section 472 of the Higher Education Act at 20 U.S.C.§1087ll. Cost of Attendance may include tuition, fees, room and board, books, and living expenses. Cost of Attendance is determined by the eligible Title IV institution, reported to the Department of Education, and published both on the school's website and on the Integrated Postsecondary Education Data System's website.

29.     To be protected from discharge pursuant to §523(a)(8)(B) as a Qualified Education Loan, a loan must be both (i) an educational loan, and (ii) made for the expenses covered by the Cost of Attendance at a Title IV school.

30.     The private student loans such as the Subject Debt are made to persons to cover expenses at non-eligible institutions or expenses exceeding the Cost of Attendance. Therefore, they are neither (i) educational loans, nor (ii) Qualified Education Loans. They are unsecured consumer debts dischargeable pursuant to the Bankruptcy Code.

31.     Defendants were and are fully aware that loans such as the Subject Debt were potentially dischargeable. For more than a decade, major lenders and underwriters have included in student loan asset-backed securities' prospectuses ("SLABS") language warning investors that,

---

[1] 26 U.S.C. §221(d)(1); 26 C.F.R. §1.221-1(e) ("In general, an eligible educational institution means any college, university, vocational school, or other postsecondary educational institution described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), as in effect on August 5, 1997, and certified by the U.S. Department of Education as eligible to participate in student aid programs administered by the Department, as described in section 25A(f)(2) and §1.25A-2(b).")

pursuant to §523(a)(8), only private loans made for qualified expenses are excepted from discharge.[2] For example, the Securitization Prospectus includes the following:

> **Risk of Bankruptcy Discharge of Private Credit Student Loan**: Currently private education loans *made for qualified education expenses* are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the borrower's cost of attendance. This process does not involve school enrollment verification as an additional criterion and, therefore, may be subject to some additional risk that *the loans were not used for qualified education expenses and thus could become dischargeable in a bankruptcy proceeding*. If you own any notes in a related issuing entity, you will bear any *risk of loss resulting from the discharge of any borrower of a private education loan . . . .*

See NCSLT Loan Trust 2015-1 Prospectus Supplement dated February 12, 2015, at 26 (https://www.NCSLT.com/assets/Final-Prospectus-2015-1.pdf) (emphasis added).

32. In addition, dozens of bankruptcy courts across the country have repeatedly held that not all student loans are non-dischargeable under the Code.

33. Lenders and loan servicers such as Defendants, therefore, recognized the risk of the discharge in bankruptcy of Consumer Education Loans that are not used for Qualified Education Expenses, such as the Subject Debt, and assumed that risk in lending the Subject Debt to the Plaintiff.

---

[2] See, e.g., SLM Student Loan Trust 2007-8 Prospectus Supplement to Base Prospectus dated October 16, 2007, at 33 (https://www.NCSLT.com/assets/about/investors/debtasset/SLM-Loan-Trust/06-10/20007-8/20078.pdf) ("Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans made for qualified education expenses are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including in their certification of the cost of attendance for their education. This process does not involve school certification as additional control and, therefore, may be subject to some additional risk that the loans are not used for qualified education expenses. If you own any notes, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan …") (emphasis added); see also SLM Loan Trust 2008-1 Prospectus

## V. CAUSES OF ACTION

### COUNT ONE - DECLARATORY JUDGMENT

34. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

35. Plaintiff requests the Court to grant a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9), that the Subject Debt should be discharged by operation of law upon completion of his Chapter 13 case, because it was not a qualified education loan protected by any subsection of section 523(a)(8).

### COUNT TWO – VIOLATION OF THE DISCHARGE INJUNCTION

36. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

37. Defendants have violated the discharge injunction by repeatedly violated the Order issued by this Court on November 19, 2013, through its aggressive and relentless debt collection efforts seeking repayment of the Subject Debt. In other words, Defendants sought to revive the personal obligation that was discharged in bankruptcy and compelled Plaintiff to pay it in spite of the bankruptcy court's order placing a permanent statutory injunction that prohibits the collection of a discharged debt. Section 524(a) provides that a discharge:

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title, whether or not discharge of such debt is waived;
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a).

38. A creditor who violates that discharge injunction is subject to being held in contempt under §105, applying the same standards that have "long governed how courts enforce injunctions." *In re Taggart*, 139 S.Ct. 1795, 1801, 204 L. Ed. 2d 129; *In re Dyer,* 322 F.3d 1178, 1189-90 (9th Cir. 2003). Under *Taggart*, as noted above, a court "may hold a creditor in civil contempt for violating a discharge order where there is," on an "objective" basis, "not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Taggart*, 139 S.Ct. 1795, 1804, 204 L. Ed. 2d 129 (emphasis added; citation omitted). "Under the fair ground of doubt standard," civil contempt "may be appropriate when the creditor violates a discharge order based on an **objectively unreasonable understanding** of the discharge order or the statutes that govern its scope." *Id*. at 1802 (emphasis original).

39. Judged under the objective standard, Defendants, being in the business of holding and collecting payments from students and former students all over the nation, are charged with actual knowledge of the dischargeability of the loans they claim to own. The circumstances surrounding the making of such private loans to millions of borrowers are known based on Defendants' business models. If there was any doubt regarding whether the Subject Debt was discharged, it was Defendants' obligation to seek an order from this Court to establish the dischargeability of the Subject Debt before launching an aggressive and prolonged campaign to collect on such debt. Thus, Defendants' failure to seek such judicial determination, and Defendants' launching the debt collection campaigns against Plaintiff cannot constitute the "fairground of doubt" protecting it from contempt of court.

40. Defendants have admitted, through their debt collection efforts, that they not only attempted, but succeeded in the collection of the Subject Debt, which was discharged in bankruptcy. Defendants' own record of debt collection, through their loan servicers and agents, constitutes clear and convincing evidence of its collection of a discharged debt in violation of the discharge injunction.

41. Plaintiff asks the Court to hold Defendants in contempt for its debt collection against him on the Subject Debt, because Defendants' debt collection, through their agents, constitutes a willful violation of this Court's Order for a discharge in Plaintiff's Chapter 13 case.

42. Plaintiff has suffered actual damages including time and resources expended in resisting Defendants' debt collection efforts, as well as attorney fees and costs in reopening the bankruptcy case to bring this adversary proceeding. Plaintiff has also experienced significant emotional distress over the past several years because of Defendants' debt collection activities. Sanctions for emotional distress are available for a violation of the discharge injunction under appropriate circumstances such as those occurring in the instant case, where Defendants coerced payments from Plaintiff through improper debt collection communication. *In re Musto*, No. 8:19-bk-03452-RCT, 2021 Bankr. LEXIS 58 (Fla. M.D. Jan. 6, 2021) (Court awarded contempt sanctions even if the law firm did not act in bad faith and even though it ceased its collection efforts, its conduct was sanctionable).

43. Additionally, the circumstances of this case warrant punitive damages to be assessed against Defendants. Although there is a split as to whether bankruptcy courts may award a debtor punitive damages based on a violation of the discharge injunction, our district is in the group of courts holding that the bankruptcy court can award punitive damages under limited

circumstances. *In re Wallace*, No. 09-bk-594-PMG, 2011 Bankr. LEXIS 1168 (M.D. Fla. April 5, 2011) (internal quotation marks and citations omitted) ("Section 105 constitutes express authority to award punitive damages for contempt to the extent necessary or appropriate to carry out the provisions of the Bankruptcy Code. Section 105 creates a statutory contempt power distinct from the court's inherent contempt powers."); *In re Cowan*, 2020 Bankr. LEXIS 3466 (N.D. Ga., Dec. 10, 2020) (The most important indicator of the reasonableness of a punitive damages award is the degree of reprehensibility of the party's conduct). Here, punitive damages are warranted given the nature of Defendants' failure to seek judicial determination of dischargeability and the manner and duration of their debt collection against the Plaintiff.

## V. JURY DEMAND

Pursuant to his rights under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff David Rivera, Jr. hereby requests a trial by jury on all triable issues.

## VI. PRAYER

In light of the foregoing, Plaintiff requests that Defendants be cited to appear, and judgment be entered against the Defendants for:

**(1)**   declaratory and injunctive relief;

**(2)**   actual, statutory, and exemplary damages; including damages for emotional distress and punitive damages;

**(3)**   attorneys' fees and costs for having to prosecute this adversary proceeding to the fullest extent permitted under the law;

**(4)**   prepetition and post-judgment interest; and

**(5)**   other such relief as the Court deems just and proper.

Dated: March 24, 2021.

Respectfully submitted,

/s/ *Christie D. Arkovich*, Esq
Christie D. Arkovich, Esq.
Florida Bar No. 963690
Barbara C. Leon, Esq.
Florida Bar No. 582115
Ha Thu Dao, Esq.
Florida Bar No. 487597
Primary E-mail: cdalaw@christiearkovich.com
Service E-mail: christie@christiearkovich.com
CHRISTIE D. ARKOVICH, P.A.
1520 W. Cleveland St.
Tampa, Florida 33606
(813) 258-2808
(813) 258-5911 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**